ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JEFFREY A. BACKHUS (CABN 200177)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5080
    FAX: (408) 535-5066
    jeffrey.backhus@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 21-00325 YGR |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| CLEMENTE GARCIA BARRAZA, | Sentencing Date: October 5, 2023<br>Time: 2:00 p.m. |
| Defendant. | |

## I. INTRODUCTION

Clemente Garcia BARRAZA ("BARRAZA") pled guilty to Count Four of the Indictment and admitted to conspiring to distribute and possess with the intent to distribute Cocaine. BARRAZA has zero criminal history points, which results in a Criminal History Category of I. Moreover, BARRAZA has fulfilled all the requirements of U.S.S.G. § 5C1.2 (a)(1)-(5), now that he has truthfully debriefed with the government within the meaning of § 5C1.2 (a)(1)(5). Accordingly, BARRAZA's base offense level is 22, minus 2 for safety Valve, and minus another 3 for acceptance of responsibility, making his total offense level 17. With a Criminal History Category of I, BARRAZA's Guidelines range is now 24-30 months. Accordingly, for the reasons discussed below, the government recommends a sentence

of 20 months imprisonment, 3 years of supervised release, and a $100 special assessment.

## II.   FACTS

This case arose out of an FBI investigation into criminal street gangs operating in the Northern District of California. On two separate occasions, the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA"), utilizing a confidential informant who was part of the FBI street gang investigation, conducted a controlled purchase of methamphetamine and/or heroin from an individual named Jaime ONTIVEROS ("ONTIVEROS"). These controlled purchases let up to a DEA T-III attempting to target ONTIVEROS' source of supply, among other people. Of relevance to this case, the T-III interceptions included the following:

- April 4, 2019 through May 3, 2019 (wire only), utilized by ONTIVEROS (408-648-3514 / TT20).  ONTIVEROS (user) and Jaime Medina-HERNANDEZ ("HERNANDEZ") were intercepted on this line.
- August 14, 2019 through September 12, 2019 (wire and electronic), utilized by HERNANDEZ (408-757-3075 / TT25). HERNANDEZ (user), ONTIVEROS and BARRAZA were intercepted on this line.

During the interception of HERNANDEZ's phone in September 2019, several intercepted calls led agent to believe that ONTIVEROS had ordered cocaine from HERNANDEZ and that BARRAZA was going to deliver it to HERNANDEZ's residence. Agents conducted a traffic stop and recovered approximately 413.1 grams of cocaine from BARRAZA's vehicle. These interceptions and seizure are detailed below.

### A.   Seizure of Cocaine on September 10, 2019

On September 10, 2019, during the interception of HERNANDEZ's phone, at approximately 1:28 p.m., agents intercepted a text message conversation between HERNANDEZ and ONTIVEROS that consisted of the following:

    ONTIVEROS: "4 ½ at 4."

    ONTIVEROS: "Soda"

    ONTIVEROS: "Let me know"

    HERNANDEZ: "Ok"

1         ONTIVEROS: "As soon as you are ready.  The sooner, the better"

2     At approximately 2:17 p.m., HERNANDEZ called BARRAZA.  HERNANDEZ asked for "big
3 saw and a little one," to be brought to the AutoZone.

4     At approximately 3:10 p.m., ONTIVEROS called HERNANDEZ.  HERNANDEZ told
5 ONTIVEROS around "4:00 to 4:30."  ONTIVEROS asked HERNANDEZ to call him when he was
6 ready so he could go over to the park.

7     At approximately 3:21 p.m., BARRAZA departed his residence.

8     At approximately 3:23 p.m., HERNANDEZ called BARRAZA, and asked if BARRAZA could
9 stop by HERNANDEZ's residence.

10     Agents had been conducting surveillance of HERNANDEZ and BARRAZA in connection with
11 the wiretap.  Agents were able to locate BARRAZA's car, a brown Crown Victoria.  At the request of
12 the agents, a marked police car, conducted a traffic stop of BARRAZA's vehicle.  A subsequent search
13 recovered approximately 413.1 grams of cocaine from BARRAZA's vehicle.  BARRAZA was later
14 released to protect the integrity of the wiretap.

15     At approximately 5:07 p.m., ONTIVEROS called HERNANDEZ.  During the conversation,
16 HERNANDEZ told ONTIVEROS that he (possibly BARRAZA) was not answering (his phone) and had
17 not arrived yet either.  ONTIVEROS asked what car he (possibly BARRAZA) was driving and if he
18 (possibly BARRAZA) had a brown Crown Victoria.  HERNANDEZ said yes.  ONTIVEROS said he
19 (possibly BARRAZA) was "stuck" (possibly being held by the cops) over by the hotel.  HERNANDEZ
20 said he (possibly BARRAZA) was messed up now.  No further relevant calls were intercepted.

21 **III.   DISCUSSION**

22     **A.   Sentencing Guidelines**

23 The government calculates the Guidelines as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2D1.1 (a)(5) and (c)(9) | 22 |
| Special offense characteristics<br>   Safety Valve eligible, U.S.S.G. §§ 2D1.1(b)(17), 5C1.2 | -2 |
| Adjustments for role in offense | None |
| Acceptance of Responsibility, § 3E1.1 | -3 |
| Total Offense Level | 17 |

GOV'T SENTENCING MEM.              3
CR 21-00325 YGR

| Criminal History Category (0 points) | I |
|---|---|
| Total Range (in months) | 24-30 |

The above Guideline offense level calculation is correct and consistent with the facts and the law. BARRAZA's offense results in a base offense level of 22. See U.S.S.G. § 2D1.1(a)(5), (c)(9). In addition, the defendant accepted responsibility and timely notified the government of his intention to plead guilty, and the government now moves for the full 3-level reduction in the defendant's offense level. See U.S.S.G. § 3E1.1(a), (b). The government also agrees that BARRAZA meets the requirements for safety valve eligibility. Accordingly, he is entitled to a 2-level reduction in his offense level, *id.* § 2D1.1(b)(17).

**B.    A 20-Month Sentence is the Reasonable and Appropriate Sentence in this Case**

The government respectfully requests that the Court impose a Guidelines sentence of 20 months of imprisonment. This sentence is supported by the § 3553(a) factors, in particular, the history and characteristics of the defendant, promoting respect for the law, the seriousness of the offense, deterring future criminal conduct, and protecting the public.

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, and protect the public from the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

The seriousness of the offense weighs in favor of a sentence of 20 months of imprisonment. Counsel may claim that BARRAZA was only delivering and storing cocaine at the direction of others. However, BARRAZA was trusted with 413.1 grams of cocaine. Turning over this quantity of drugs to

anyone other than a known and trusted member of the conspiracy creates unacceptable risks for a drug supplier. *See United States v. Rodriguez-Castro*, 641 F.3d 1189, 1193 (9th Cir. 2011) ("The court was justifiably skeptical that this amount of drugs would be entrusted to a minor player."). While *Rodriguez-Castro* involved significantly more drugs that were recovered in this case, the reasoning still stands. An inexperienced operator might be careless and fail to secure the drugs. He might be dishonest and just steal the drugs. Or he might report the other participants to law enforcement and get everyone arrested. In an illicit trade, there is no recourse to the legal system. A supplier can hardly call the police to report the theft of cocaine. The fact that BARRAZA was entrusted with this much cocaine shows his level of trust in the conspiracy.

In ther sentencing brief, the defense references a memo issued by Attorney General Merrick Garland on December 16, 2022. Defendant's Sentencing Memorandum at p. 2. The defense goes on to state, without a specific citation to the memo, that, "[t]he Garland Memo specifically states that if the person meets the stated criteria, is a 'mule', this court should provide a variance to probation or supervised release with credit for time served." *Id*. I have reviewed both memos issued by the Attorney General in December 2022 and they provide no specific guidance requiring probation and/or time served sentences for "drug mules." Moreover, the Court is no way restricted in its sentencing determination by the guidance in those memos.

Under the terms of the plea agreement, the defense is certainly allowed to argue for any sentence they believe is appropriate including probation and a time served sentence. Similarly, the government is permitted to argue for a sentence it deems appropriate under the terms of the plea agreement. Here, the government is recommending a sentence of 20 months, which is below the Guidelines range described above.[1]

Given BARRAZA's lack of criminal history, the government understands that a 20-month

---

[1] The government does not typically comment on plea negotiations, however, in their sentencing memorandum, the defense states that, "the [initial] ASUA offer was probation." Defendant's Sentencing Memorandum at p. 1, line 25. While the government has consistently told the defense that they are free to argue for a probationary sentence under the plea agreement, the government never made any promises that it will recommend probation for BARAZZA. In fact, in the plea agreement, "[t]he government agrees to a recommend a sentence within the range associated with the Guidelines calculation set out in paragraph 7 . . .." Plea Agreement, at ¶ 15. Here, the government is actually recommending a sentence below the applicable Guidelines range.

sentence is substantial.  The government also recognizes that BARRAZA has suffered from an addiction to cocaine for many years.  Finally, BARRAZA has a consistent history of legitimate employment and has the support of his family.  Accordingly, the government therefore recommends a sentence below the low end of the Guidelines.

## IV. CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence BARRAZA to a sentence of 20 months of imprisonment.

DATED: September 28, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*Jeffrey A. Backhus*
JEFFREY A. BACKHUS
Assistant United States Attorneys